IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| WALLY L. WEST, | ) | |
|---|---|---|
| No. N-28098, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-cv-1153-JPG |
| vs. | ) | |
| | ) | |
| MARION COUNTY SHERIFF'S | ) | |
| DEPARTMENT, | ) | |
| RICH STEVENSON, | ) | |
| KEVIN CRIPPS, | ) | |
| RYAN CASTLEMAN, | ) | |
| CLAYTON CAIN, | ) | |
| CRAIG VIEIRA, | ) | |
| TYLER PARKER, and | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Wally L. West, an inmate at Shawnee Correctional Center ("Shawnee"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On July 19, 2015, Defendants executed a search warrant on Plaintiff's property. Plaintiff contends Defendants' actions violated his Fourth and Fourteenth Amendment rights and seeks monetary damages. Plaintiff's current incarceration at Shawnee appears to be on charges that are unrelated to the search warrant at issue in the instant case. In connection with these claims, Plaintiff sues the Marion County Sheriff's Department, Rich Stevenson (Sheriff, Marion County Sheriff's Department), Ryan Castleman (Detective, Marion County Sheriff's Department), Kevin Cripps (Detective, Marion County Sheriff's Department), Craig Vieira (Police Officer, Marion County

1

Sheriff's Department), Clayton Cain (Sargent, Police Officer, Marion County Sheriff's Department), Tyler Parker (Police Officer, Marion County Sheriff's Department), and John Doe (Police Officer).  All Defendants are sued in their individual and official capacities.

The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Plaintiff's Complaint does not survive review under this standard.

## The Complaint

On July 19, 2015, Cripps sought and obtained a search warrant for Plaintiff's property. (Doc. 1, p. 12). The warrant allowed police to search "the property, residence, vehicles, outbuildings and persons located at 300 W. Case Street, Kinmundy, Il. 62854." (Doc. 1, p. 15). Plaintiff was the owner of the subject property. (Doc. 1, p. 6). However, both Plaintiff and an individual by the name of Tyler West occupied the property. (Doc. 1, p. 20).

As noted above, Cripps is the officer that applied for the search warrant. (Doc. 1, pp. 12-14). Cripps' warrant application was premised on information obtained during the investigation and subsequent arrest of April Bardle. *Id.* Specifically, Cripps' warrant application included the information summarized in the following paragraph.

On the morning of July 19, 2015, April Bardle's parents contacted the Madison County Sheriff's Department to report their daughter had stolen cash from Mrs. Bardle's purse. (Doc. 1, p. 12). Cripps responded to the report and subsequently located April Bardle at Plaintiff's residence. (Doc. 1, p. 12). April Bardle was taken into custody, transported to the Marion County Jail, and charged with theft. (Doc. 1, p. 13). While at the Marion County Jail, Bardle was searched. (Doc. 1, p. 13). The search revealed two items in April Bardle's possession, both of which tested positive for cocaine. (Doc. 1, p. 13). April Bardle subsequently revealed that on two occasions on July 18, 2015 and on one occasion on July 19, 2015 she purchased the drug known as SALT at Plaintiff's residence. (Doc. 1, pp. 13-14). It appears that both Plaintiff and Tyler West were present on all three occasions. (Doc. 1, pp. 13-14). However, Tyler West is identified as the individual that accepted Plaintiff's money in exchange for the SALT. (Doc. 1, pp. 13-14).

Although not entirely clear, Plaintiff seems to allege the search warrant was unlawful because: (1) April Bardle is a drug user and had used drugs shortly before her arrest; (2) April Bardle admitted to performing oral sex for money the night before her arrest; (3) April Bardle never observed Plaintiff doing anything illegal or in possession of anything illegal; (4) April Bardle never observed anything illegal in plain view while at Plaintiff's residence; (5) although materials found in April Bardle's possession tested positive for cocaine, April Bardle reported purchasing and using SALT at Plaintiff's residence; (6) April Bardle did not appear before the judge issuing the warrant or sign an affidavit; and (7) the search warrant did not include a description for "anything to be searched." (Doc. 1, pp. 5-6).

At approximately 11:00 PM the search warrant was executed by the Illinois Law Enforcement Alarm System Tactical Response Team ("ILEAS"). (Doc. 1, p. 6). According to an exhibit attached to the Complaint, ILEAS was utilized as a result of "intelligence gathered and information that [Plaintiff] is known to carry a firearm." (Doc. 1, p. 20). ILEAS used battering rams and flash grenades to breach Plaintiff's residence. (Doc. 1, p. 6). After securing the scene, ILEAS turned the scene over to Castleman, Cripps, Cain, Vieira, Parker, and Doe. (Doc. 1, p. 6). These individuals "conducted a search of the residence, outbuildings, property, and vehicles as set forth in the search warrant." (Doc. 1, p. 6). According to the Complaint, no contraband was found. (Doc. 1, p. 6). Police reports attached to the Complaint indicate that the following items were seized:

- Digital Scale and a green drug pipe
- Mucus & Sinus relief bottle with miscellaneous pills including 8 Trazadone pills
- Beretta Model U22 with loaded magazines
- 2 multi-colored drug pipes

- Numerous syringes and a sealed bottle of 17-AlphaHydroxyProgesterone
- Glass Container with a small amount of green leafy substance (field tested positive for the presence of Marijuana and weighed less than 1.0 gram).

(Doc. 1, p. 21).

When the warrant was executed, Plaintiff was working on his car which was parked in the back of his residence on public property. (Doc. 1, p. 6). Plaintiff and Anthony Finckbone, an individual located on the property, were taken into custody, removed from the scene, and detained at the Marion County Sheriff's Department. (Doc. 1, pp. 6, 20). The Complaint asserts that Plaintiff was taken into custody at gunpoint, but provides no further details with regard to who took Plaintiff into custody or with regard to Plaintiff's subsequent transport to the Marion County Sheriff's Department. No charges were filed in relation to execution of the search warrant and the case was closed. (Doc. 1, p. 6).

Plaintiff contends that ILEAS officers damaged his residence during execution of the search warrant. (Doc. 1, pp. 6, 24-36). The damage to Plaintiff's residence was approximately $5,000. (Doc. 1, pp. 24-36). Plaintiff contends the Marion County Sheriff's Department is liable for the damage because ILEAS executed the search warrant on its behalf. (Doc. 1, pp. 6, 24). Plaintiff has sought compensation from the Marion County Sheriff's Department; however, his demand has been ignored. (Doc. 1, p. 6).

Plaintiff contends Defendants violated his rights under the Fourth and Fourteenth Amendments when executing the search warrant on July 19, 2015 and in detaining Plaintiff during the investigation. Additionally, Plaintiff brings state law claims for unlawful restraint, criminal trespass, criminal damage, and official misconduct. Plaintiff seeks compensatory and punitive damages.

## Dismissal of Certain Parties and Official Capacity Claims

**Rich Stevenson in his Individual Capacity (Sheriff, Marion County Sheriff's Department)**

Plaintiff has named Stevenson as a defendant in his caption, but he includes no allegations about Stevenson in the narrative of his complaint. Merely naming a party in the caption of a complaint is not sufficient to state a claim against him. *Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998). Moreover, Stevenson is not subject to liability merely because he is a supervisory official. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir.2008) (the doctrine of r*espondeat superior* does not apply to actions filed under 42 U.S.C. § 1983); *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983) (discussing *respondeat superior* liability in § 1983 actions).[1] Accordingly, all claims against Stevenson shall be dismissed without prejudice.

**Marion County Sheriff's Department and Official Capacity Claims**

Plaintiff's official capacity claims are the functional equivalent of a direct suit against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165, 166 (1985). The same is true for Plaintiff's claims against the Marion County Sheriff's Department. *Est. of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Accordingly, these claims are constrained by the parameters of *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell,* "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. at 694. Rather, in order to obtain relief against a municipality, a plaintiff must allege that the deprivations of his rights were the result of an official policy, custom, or practice of the municipality. *Id.* at 691; *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir.2006).

Plaintiff has not satisfied this standard. Plaintiff does not assert that the alleged constitutional violations were caused by a municipal custom or policy. Accordingly, Plaintiff's allegations against the

---

[1] "Supervisory liability will be found ... if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). In the instant case, there are no allegations pertaining to supervisory liability as to Stevenson. Indeed, as noted above, the Complaint does not include any allegations that are specific to Stevenson.

Marion County Sheriff's Department and Plaintiff's official capacity claims are subject to dismissal for failure to state a claim on which relief can be granted. The Marion County Sheriff's Department and Plaintiff's official capacity claims shall be dismissed from this action without prejudice.

## **Discussion**

Based on the allegations of the Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**COUNT 1-** Defendants conducted an unlawful search of Plaintiff's residence and related property on July 19, 2015, in violation of the Fourth Amendment;

**COUNT 2-** Defendants unlawfully detained Plaintiff during the search of his property on July 19, 2015, in violation of the Fourth Amendment;

**COUNT 3-** Defendants used excessive force when executing the search Warrant on July 19, 2015, in violation of the Fourth Amendment;

**COUNT 4-** State law claim for unlawful restraint for detaining Plaintiff on July 19, 2015;

**COUNT 5-** State law claim for criminal trespass to private property;

**COUNT 6-** State law claim for criminal damage to property; and

**COUNT 7-** State law claim for official misconduct.

**Count 1**

In order for a search warrant to be valid, it must (1) be issued by a neutral, disinterested magistrate; (2) establish probable cause that the evidence sought will aid in obtaining a conviction of a particular offense; and (3) particularly describe the things to be seized and the place to be searched. *Dalia v. United States*, 441 U.S. 238, 255, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979). Probable cause exists for a search warrant where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A good faith presumption arises when an officer obtains a warrant. *See United States v. Childs,* 447 F.3d 541, 546 (7th Cir. 2006); *U.S. v. Elst,* 579 F.3d 740, 744 (7th Cir.2009). To rebut this presumption, Plaintiff must show that:

> (1) the issuing judge wholly abandoned his judicial role and failed to perform his neutral and detached function ..., (2) the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (3) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.

*Id*. (citations omitted).

The record in the instant case demonstrates that the warrant was based on probable cause. The complaint for search warrant was signed and sworn by Cripps. The search warrant complaint described the contraband located on April Bardle, which tested positive for cocaine, and her connection to Plaintiff's property. It also described April Bardle's statements regarding recently purchasing and ingesting a substance she referred to as SALT on Plaintiff's property. During this interview, April Bardle described Plaintiff's property with particularity, suggesting personal knowledge. Additionally, the search warrant complaint described the day's events, including the fact that April Bardle was located on Plaintiff's property immediately before the search that revealed April Bartle was in possession of a substance that tested positive for cocaine.

After reviewing this information, a neutral magistrate issued the search warrant, which described with particularity the place to be searched and the things to be seized.

Considering these factors, it is evident that the search warrant was based upon probable cause and complied with the directives of the Fourth Amendment.[2] Additionally, the Complaint falls far short of overcoming the good faith presumption that attaches when an officer obtains a warrant in accord with the Fourth Amendment. Furthermore, even if the search warrant lacked probable cause, the Defendants are entitled to qualified immunity in obtaining and executing the search warrant.[3] *See Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010) (officers "liable for § 1983 damages only if the warrant application was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.' ") (Quoting *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 89L.Ed.2d 271 (1986); *Morris v. County of Tehama*, 795 F.2d 791, 795 (9th Cir.1986) (discussing good faith standard as to officers executing a warrant).

Accordingly, Count 1 shall be dismissed with prejudice.

**Count 2**

A warrant to search for contraband founded upon probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *United States v. Price*, 888 F.2d 1206, 1209

---

[2] In addition to permitting the search of certain property, the warrant allowed for the search of "persons located at 300 W. Case Street." (Doc. 1, p. 15). The constitutionality of warrants permitting officers to search all persons located on a certain premises is not entirely clear. *See U.S. v. Guadarrama,* 128 F.Supp.2d 1202, 1206-1214 (E.D. Wis. 2001) (collecting cases and noting the Seventh Circuit has yet to directly address the issue). *See also Owens ex rel. Owens v. Lott*, 372 F.3d 267 (4th Cir. 2004) ("all persons" warrants for private premises only "pass constitutional muster if the affidavit and information provided to the magistrate supply enough detailed information to establish probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity."). Regardless, even assuming the "all persons" portion of the warrant is not permissible, that portion of the warrant is severable. *See U.S. v. Klebig,* 228 F. App'x 613, 617-618 (7th Cir. 2007).

[3] Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, immunity questions should be addressed at the earliest possible stage in litigation. *Id*. (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

(7th Cir.1989). *Summers i*nvolved the on-premises detention of a defendant who was descending the front steps of his residence when police arrived to execute a search warrant. *Summers,* 452 U.S. at 693. The defendant was detained, at the premises being searched, for the duration of the search. The Supreme Court reasoned that such a detention was permissible, in part, because it took place in the detainee's home and "would involve neither the inconvenience nor the indignity associated with a compelled visit to the police station." *Summers*, 452 U.S. at 702.

Recently, in *Bailey v. United States,*[4] 133 S. Ct 1031 (2013), the Supreme Court concluded that the rule announced in *Summers* is subject to spatial or geographical limitations. Specifically, the Court concluded that an occupant may not be detained incident to search if he or she is beyond the immediate vicinity of the premises to be searched. *Bailey,* 133 S.Ct. at 1042. Although the facts at issue in *Bailey* did not necessitate providing a precise definition of the phrase "immediate vicinity," the Supreme Court explained that "[i]n closer cases courts can consider a number of factors to determine whether an occupant was detained within the vicinity of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id*. at 1042.

In the instant case, Plaintiff was likely within the "immediate vicinity" of a premises being searched under the standard announced in *Bailey.* Plaintiff was taken into custody while working on his vehicle in close proximity to the premises being searched and was apparently within the line of sight of the subject property. As such, it would have been lawful under

---

[4] In *Bailey*, law enforcement officers followed the defendant's vehicle for about a mile, before pulling the vehicle over while other officers executed a search warrant at an apartment. *Bailey*, 133 S.Ct. at 1036. The defendant was subsequently charged with offenses based on contraband found inside the apartment. *Id*. The Supreme Court concluded that *Summers* did not apply to this situation. *Id*. at 1042. The Court determined that the initial detention was improper because the defendant "was detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question." *Id*. at 1042–43.

*Summers* and *Bailey* to detain plaintiff *at the scene* for the duration of the search. However, it appears Plaintiff was not detained at the scene of the search. Instead, exhibits attached to the Complaint indicate Plaintiff was removed from the scene and transported to the Marion County Sheriff's Office where he was mirandized and interrogated. (Doc. 1, p. 21). Thus, the intrusion on Plaintiff was significantly greater than that permitted in *Summers*. Accordingly, Plaintiff's removal from the scene and subsequent detention at the Marion County Sheriff's Department *may* state a constitutional violation.

However, even assuming Plaintiff has alleged a viable claim for unlawful detention, Count 2 is subject to dismissal. A defendant is only liable under § 1983 if he or she was personally involved in the constitutional violation. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). Here, Plaintiff does not allege which, if any, of the Defendants was personally involved in his allegedly wrongful detention. That is, there are no allegations indicating who removed Plaintiff from the residence and detained him at the Marion County Sheriff's Department. Nor are there any allegations describing who was involved in the decision to remove Plaintiff from the residence and detain him at the Marion County Sheriff's Department. Absent this information, Plaintiff has failed to allege personal involvement as to any Defendant that is sufficient to state a claim. *See Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation."). Additionally, without identifying who is responsible for the alleged violation, the Complaint does not provide the type of notice contemplated under Rule 8. *See Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (discussing fair notice).

Accordingly, Count 2 shall be dismissed without prejudice.

**Count 3**

A claim for property damage occasioned during the execution of a valid search warrant is evaluated pursuant to the general touchstone of reasonableness which governs Fourth Amendment analysis. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *United States v. Ramirez*, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998)). Even though the entry may be lawful, "excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment." *United States v. Ramirez*, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). Violations of an individual's Fourth Amendment rights, perpetrated under color of law, may be pursued in accordance with 42 U.S.C. § 1983. In order to prevail on a claim against a police officer for the use of unreasonable force in conducting police activities, a plaintiff must establish each individual officer's personal responsibility for the unreasonable force used. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

In the instant case, it is clear that the claims against Defendants are subject to dismissal for lack of personal involvement. Here, ILEAS officers – not the named Defendants – are the individuals that made entry into Plaintiff's home. Nothing in the Complaint indicates that any of the Defendants were personally responsible for damage to Plaintiff's residence.

Accordingly, Count 3 shall be dismissed without prejudice.

**Counts 4-7 (State Law Claims)**

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts 4 through 7). 28 U.S.C. § 1367(c)(3); *Capeheart v. Terrell*, 695 F.3d 681, 686 (7th Cir. 2012). Accordingly, Plaintiff's state law claims shall be dismissed without prejudice.

**<u>Pending Motions</u>**

The motion for service of process at government expense (Doc. 4) is **TERMINATED AS MOOT**. No such motion is necessary for a Plaintiff who has been granted leave to proceed in forma pauperis ("IFP"). If Plaintiff files an amended complaint that survives preliminary review, the Court shall order service on all defendants who remain in the action. *See* 28 U.S.C. § 1915(d).

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3). The dismissal of the complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

Plaintiff's Motion states that he has a high school education, does not have access to a law library, and does not have experience in the practice of law. In addition, Plaintiff's Motion indicates that he has contacted several law offices in an attempt to obtain legal representation.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a pro se litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question...is whether

the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

The Court finds that the recruitment of counsel is not warranted at this stage of the litigation. At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak. All that is required is for Plaintiff to provide an amended complaint that includes sufficient factual content. Plaintiff alone has knowledge of these facts, and no legal training or knowledge is required to set them down on paper. Therefore, the Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice. The Court will remain open to appointing counsel as the case progresses.

## Disposition

The Clerk is **DIRECTED** to **TERMINATE STEVENSON** and **THE MARION COUNTY SHERIFF'S DEPARTMENT** as parties in CM/ECF.

**IT IS HEREBY ORDERED** that all claims against **STEVENSON** in his individual capacity are dismissed without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that all claims against **THE MARION COUNTY SHERIFF'S DEPARTMENT** are dismissed without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that all official capacity claims are dismissed without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that **COUNT 1** is dismissed with prejudice.

**IT IS FURTHER ORDERED** that **COUNT 2** is dismissed without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that **COUNT 3** is dismissed without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that **COUNTS 4, 5, 6,** and **7** are dismissed for lack of jurisdiction, as the Court declines to exercise supplemental state law jurisdiction after dismissing Plaintiff's federal claims.

The Complaint is dismissed without prejudice. Plaintiff is **GRANTED** leave to file a "First Amended Complaint" in order to state a claim in Counts 2 and 3. The First Amended Complaint must be filed on or before **May 18, 2017**. Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for this action (*i.e.* 16-cv-1153-JPG).

To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1

(7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 19, 2017**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**