# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WALLY L. WEST, ) <br> No. N-28098, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> KEVIN CRIPPS, ) <br> RYAN CASTLEMAN, ) <br> CLAYTON CAIN, ) <br> CRAIG VIEIRA, ) <br> TYLER PARKER, and ) <br> JOHN DOE, ) <br> ) <br> Defendants. ) | Case No. 16-cv-1153-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Wally L. West, an inmate at Shawnee Correctional Center ("Shawnee"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Doc. 15). On July 19, 2015, Defendants executed a search warrant on Plaintiff's property. Plaintiff contends Defendants' actions violated his Fourth Amendment rights and seeks monetary damages. Plaintiff's current incarceration at Shawnee appears to be on charges that are unrelated to the search warrant at issue in the instant case. In connection with these claims, Plaintiff sues Kevin Cripps (Detective, Marion County Sheriff's Department), Ryan Castleman (Detective, Marion County Sheriff's Department), Craig Vieira (Police Officer, Marion County Sheriff's Department), Clayton Cain (Sargent, Police Officer, Marion County Sheriff's Department), Tyler Parker (Police Officer, Marion County Sheriff's Department), and John Doe (employee, Marion

County Sherriff's Department, allegedly involved in executing the search warrant on Plaintiff's property).

The Amended Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

On July 19, 2015, Cripps sought and obtained a search warrant for Plaintiff's residence. (Doc. 15, pp. 11, 13-15). The warrant allowed police to search "the property, residence, vehicles, outbuildings and persons located at 300 W. Case Street, Kinmundy, Il. 62854." *Id.* The residence

was "commonly occupied" by Plaintiff and an individual identified as Tyler West. (Doc. 15, p. 20).

The search warrant was executed at approximately 11:05 p.m. on July 19, 2015. (Doc. 15, pp. 7, 20). According to the Amended Complaint, Cripps, Vieira, and the Illinois Law Enforcement Alarm System Tactical Response Team ("ILEAS")[1] executed the search warrant. (Doc. 15, p. 7). Battering rams were used to breach the doors and flash grenades were thrown through the windows. *Id.* Plaintiff's residence was damaged in the process. *Id.* According to the Amended Complaint, the damage to the property was approximately $5,000.00. (Doc. 15, p. 8). Plaintiff contends the force used to execute the search warrant was excessive. (Doc. 15, pp. 7-8).

Plaintiff states that he has not named anyone associated with ILEAS in connection with this claim because documents he has received from ILEAS indicate that ILEAS only assists police departments in executing search warrants. (Doc. 15, p. 7). According to the information Plaintiff received from ILEAS, the department it assists is responsible for any damages that might result.

Instead, Plaintiff names Cripps, Vieira, Castleman, Parker, Cain, and John Doe. Plaintiff's allegations regarding the role these individuals played in the alleged excessive force incident are somewhat muddled. Plaintiff alleges that Cripps and Vieira might be subject to liability because they were "in charge at the scene." *Id.* He also suggests that Cripps, Vieira, and the ILEAS officers were all involved in breaching the residence. As to the other Defendants named in connection with this claim, Plaintiff merely alleges that they were either involved in

---

[1] An exhibit attached to the Amended Complaint (a letter from ILEAS addressed to Plaintiff in response to his FOIA request) provides the following information with regard to ILEAS:

> ILEAS is a public agency that coordinates law enforcement agencies, but ILEAS does not employ police officers. You described police officers executing a search warrant for the Sheriff's Office. Those police officers would all be employed by police departments in and around Marion county.

(Doc. 15, p. 18).

breaching the residence *or* in searching the residence. *Id.* He does not know what role, if any, they played in the alleged use of excessive force. *Id.*

When the warrant was executed, no one was in the residence. (Doc. 15, p. 7). Plaintiff was behind the residence, on public property. (Doc. 15, p. 6). Plaintiff claims officers knew the residence was empty because the residence had been under surveillance all day. (Doc. 15, p. 8).

Plaintiff was "seized at gun point" and handcuffed by Cripps. (Doc. 15, pp. 6-7). Cripps and an individual identified as T. Conrad (not named as a defendant) then escorted Plaintiff to a police vehicle and placed Plaintiff in the back seat of the vehicle. (Doc. 15, p. 6). Cripps told T. Conrad to transport Plaintiff to the Marion County Jail. *Id.* At the Marion County Jail, Plaintiff was strip searched and placed in a holding cell. *Id.* Plaintiff was then taken to an interview room and mirandized by Castleman. Plaintiff asked to leave numerous times, but his requests were denied. *Id.* After being questioned, Castleman determined that Plaintiff would be detained until the next day. *Id.* Plaintiff was placed in a holding cell and was not released until the next day. *Id.* No charges were filed. *Id.* Plaintiff was placed in a holding cell. *Id.* Plaintiff was released the following day, without charge. *Id.*

## **Discussion**

Based on the allegations of the Amended Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**COUNT 1**- Cripps and Castleman unlawfully detained Plaintiff during the search of his property on July 19, 2015, in violation of the Fourth Amendment.

**COUNT 2**- Defendants used excessive force when executing the search Warrant on July 19, 2015, in violation of the Fourth Amendment.

**Count 1**

A warrant to search for contraband founded upon probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *United States v. Price*, 888 F.2d 1206, 1209 (7th Cir.1989). *Summers i*nvolved the on-premises detention of a defendant who was descending the front steps of his residence when police arrived to execute a search warrant. *Summers,* 452 U.S. at 693. The defendant was detained, at the premises being searched, for the duration of the search. The Supreme Court reasoned that such a detention was permissible, in part, because it took place in the detainee's home and "would involve neither the inconvenience nor the indignity associated with a compelled visit to the police station." *Summers*, 452 U.S. at 702.

Recently, in *Bailey v. United States,*[2] 133 S. Ct 1031 (2013), the Supreme Court concluded that the rule announced in *Summers* is subject to spatial or geographical limitations. Specifically, the Court concluded that an occupant may not be detained incident to search if he or she is beyond the immediate vicinity of the premises to be searched. *Bailey,* 133 S.Ct. at 1042. Although the facts at issue in *Bailey* did not necessitate providing a precise definition of the phrase "immediate vicinity," the Supreme Court explained that "[i]n closer cases courts can consider a number of factors to determine whether an occupant was detained within the vicinity

---

[2] In *Bailey*, law enforcement officers followed the defendant's vehicle for about a mile, before pulling the vehicle over while other officers executed a search warrant at an apartment. *Bailey*, 133 S.Ct. at 1036. The defendant was subsequently charged with offenses based on contraband found inside the apartment. *Id*. The Supreme Court concluded that *Summers* did not apply to this situation. *Id*. at 1042. The Court determined that the initial detention was improper because the defendant "was detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question." *Id*. at 1042–43.

of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id*. at 1042.

In the instant case, Plaintiff was taken into custody while working on his vehicle "which was located in the rear of the property on public property." (Doc. 15, p. 6). If Plaintiff was in the "immediate vicinity" of the premises being searched, it would have been lawful under *Summers* and *Bailey* to detain plaintiff *at the scene* for the duration of the search. However, Plaintiff was not detained at the scene of the search. Plaintiff was removed from the scene (at gunpoint and in handcuffs) and transported to the Marion County Sheriff's Office. Once there, Plaintiff was strip searched and placed in a holding cell. He was then mirandized and questioned. After questioning, Plaintiff was placed in a holding cell until the following day. Thus, the intrusion on Plaintiff was significantly greater than that permitted in *Summers*. Accordingly, Plaintiff's removal from the scene and subsequent detention at the Marion County Sheriff's Department *may* state a constitutional violation as to Cripps and Castleman – the only two Defendants alleged to be personally involved in Plaintiff's detention.

Accordingly, Count 1 shall receive further review as to Cripps and Castleman

**Count 2**

A claim for property damage occasioned during the execution of a valid search warrant is evaluated pursuant to the general touchstone of reasonableness which governs Fourth Amendment analysis. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *United States v. Ramirez*, 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998)). Even though the entry may be lawful, "excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment." *United States v. Ramirez*, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d

191 (1998). Violations of an individual's Fourth Amendment rights, perpetrated under color of law, may be pursued in accordance with 42 U.S.C. § 1983.

In the instant case, flash-bang devices and battering rams were used during the execution of the search warrant, causing damage to the residence. The Seventh Circuit has discussed the use of flash bang devices in a number of cases. *Estate of Escobedo v. Bender*, 600 F.3d 770, 784–86 (7th Cir.2010) ("*Escobedo* I"); Estate of *Escobedo v. Martin*, 702 F.3d 388 (7th Cir.2012); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963 (7th Cir.2003); *U.S. v. Folks*, 236 F.3d 384, 388 (7th Cir.2001); *U.S. v. Jones*, 214 F.3d 836, 838 (7th Cir.2000).

Perhaps the most comprehensive discussion pertaining to the use of flash bang devices is contained in *Escobedo I*:

> We have previously indicated that the use of flash bang devices should be limited and is not appropriate in most cases. In *Molina v. Cooper*, 325 F.3d 963 (7th Cir. 2003), while we found that the officers' use of flash bang devices during the execution of a "high risk" search warrant—which was obtained for Molina's home on suspicion of drug activity—was reasonable because Molina had a criminal history that included aggravated assault, was alleged to be the head of a drug distribution organization, was associated with gangs, was home and had access to a stash of weapons, we expressly stated that "we in no way suggest that the use of flash bang devices is appropriate in every case (or even most cases)." *Id*. at 966 n. 1, 973. In finding that the officers' deployment of flash bang devices was reasonable, we emphasized that the officers had a significant reason to be concerned about their personal safety and we expressly limited our holding to the circumstances presented in that case. *See id*. at 973. In *United States v. Folks*, 236 F.3d 384 (7th Cir. 2001), we discussed, in *dicta*, the potentially serious injuries that may arise from the use of a flash bang device during a search. We suggested that a sufficiently careful (or perhaps reasonable) use of a flash bang device occurs when officers take a moment to look inside a residence or a room to ensure that no one would be injured by the device before tossing it and where officers carry a fire extinguisher to quickly extinguish any fires resulting from deployment of the device. *Id*. at 388 n. 2. We also, in no uncertain terms, pointed out that the use of a flash bang device is justified when "potentially violent people [can] be found in [a] house," as opposed to individuals who pose no threat to the police or others. *Id*. at 388 n. 2 (emphasis added). We noted that if the government does not use discretion in when and how they use flash bang devices, they "may [ ] risk significant damage claims from the careless deployment of flash-bang devices." *Id*. In *United States v. Morris*, 349 F.3d 1009 (7th Cir.2 003), we explicitly stated

 that this Court has "often emphasized the dangerous nature of flash-bang devices and has cautioned that the use of such devices in close proximity to suspects may not be reasonable." *Id*. at 1012. (Emphasis added). We suggested, also in dicta, that the use of a flash bang *785 grenade is reasonable only when there is a dangerous suspect and a dangerous entry point for the police, when the police have checked to see if innocent individuals are around before deploying the device, when the police have visually inspected the area where the device will be used and when the police carry a fire extinguisher. *See id*. at 1012 n. 1.

 We also discussed the appropriateness of using flash bang devices in *United States v. Jones*, 214 F.3d 836, 837–38 (7th Cir.2000). In *Jones*, we were disturbed by the officers use of flash bang devices and stated that while the district court found their conduct to be reasonable, we were less certain. *Id*. Specifically, we unambiguously stated that "police cannot automatically throw bombs into drug dealers' houses, even if the bomb goes by the euphemism 'flash-bang device'," particularly where they do not believe the drug dealer is an unusually dangerous individual. *Id*. We found this to be true even though guns are normally used in the drug trade and even where a drug dealer has a prior weapons offense. *Id*. Lastly, while Jones was a criminal case that discussed the use of flash bangs in the context of suppressing evidence, we specifically stated that "[i]f this were a damages action seeking compensation for injury to the occupants or to the door, the claim would be a serious one." *Id*.

*Estate of Escobedo v. Bender*, 600 F.3d 770, 784–85 (7th Cir. 2010).

In the instant case, further development of the record is necessary to determine if the use of force in executing the search was reasonable under the standards discussed above. However, Plaintiff may only proceed against named Defendants who were personally involved in the alleged use of excessive force. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

The Amended Complaint fails to allege personal involvement as to Castleman, Parker, Cain, and John Doe. In essence, Plaintiff alleges that these individuals were present at the scene. (Doc. 15, p. 7). This is insufficient. Accordingly, these individuals shall be dismissed from the action without prejudice for failure to state a claim upon which relief can be granted.

Read liberally, the Amended Complaint suggests that Cripps, Vieira, and ILEAS officers were personally involved in the alleged use of excessive force in executing the search warrant. (Doc. 15, p. 7, "The Marion county Sheriff's Department served a search warrant to the above address…Sargent Kevin Cripps and Deputy Craig Vieira from the Marion County Sheriff's Department along with ILEAS. Battering rams were used to breach the doors and flash grenades were [thrown] through the windows."). This is sufficient, at this early stage in the litigation, to allow Count 2 to proceed as to Cripps and Vieira. The Court emphasizes, however, that Count 2 may proceed against these individuals only to the extent that they were personally involved in the use of excessive force. These individuals are not subject to liability merely because they were "in charge at the scene."

The Amended Complaint also suggests that unknown ILEAS officers were personally involved in the alleged use of excessive force. However, Plaintiff has elected not to name these individuals as defendants in this action.

For the reasons stated herein, Count 2 shall be dismissed without prejudice as to Castleman, Parker, Cain, and John Doe. Count 2 shall receive further review as to Cripps and Vieira.

## Disposition

The Clerk is **DIRECTED** to **TERMINATE CAIN, PARKER,** and **JOHN DOE** as parties in CM/ECF.

**IT IS ORDERED** that **COUNT 1** shall receive further review as to **CRIPPS** and **CASTLEMAN**.

**IT IS FURTHER ORDERED** that **COUNT 2** is dismissed without prejudice as to **CASTLEMAN, CAIN, PARKER,** and **DOE** for failure to state a claim upon which relief can be granted. **COUNT 2** shall receive further review as to **CRIPPS** and **VIEIRA**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **CRIPPS, CASTLEMAN,** and **VIEIRA**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including Plaintiff's Motion for Recruitment of Counsel (Doc. 20). Further, this entire matter shall be **REFERRED** to a United States

Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 17, 2017**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**
